MARLA CHAMPAGNE *v.* RENE CHAMPAGNE
(15549)

Dupont, C. J., and Heiman and Hennessy, Js.

---

Submitted on briefs October 28—officially released December 24, 1996

*Lee Marlow* filed a brief for the appellant-appellee (defendant).

*Irving H. Perlmutter* filed a brief for the appellee-appellant (plaintiff).

HENNESSY, J. The defendant, Rene Champagne, appeals from a postjudgment order interpreting and enforcing a provision in the separation agreement incorporated into the judgment dissolving his marriage to the plaintiff, Marla Champagne. On appeal, the defendant

claims that (1) the trial court's findings were clearly erroneous and (2) the trial court's orders were tantamount to a modification of a property settlement. In her cross appeal, the plaintiff claims that the trial court improperly denied her motion for an award of counsel fees to defend against the defendant's motion to adjudge her in contempt. We reverse the judgment of the trial court in part and affirm it in part.

The parties were married on September 3, 1977, and their marriage was dissolved on January 4, 1993. They have four minor children. The judgment of dissolution incorporated by reference the terms of the parties' separation agreement, dated November 12, 1992. Paragraph 11.4 of the separation agreement provides: "The Husband owns a life insurance policy with the Guardian Insurance Company in the face amount of $500,000, with a cash value of approximately $60,000, which funds shall be placed in Trust for the benefit of the children, to be used for their education, with Philip DeCaprio as Trustee."

On September 13, 1995, the trial court heard the parties' cross motions for contempt. The defendant moved to adjudge the plaintiff in contempt and to remove the plaintiff as cotrustee of the insurance policy. The plaintiff moved for contempt on the ground that the defendant had failed to comply with paragraph 11.4 of their separation agreement and also sought counsel fees to defend against the defendant's contempt action. The court found that, under the agreement, the defendant was obligated to set aside approximately $60,000 in trust for the children and "whatever additional monies were generated by the prudent investment of that fund would be available to be administered by Philip DeCaprio, trustee, for the benefit of the children's education." The court found that the defendant had not complied with the judgment but did not find him in contempt. The court denied both the defendant's motion to find

the plaintiff in contempt and the plaintiff's motion for counsel fees.

At a separate hearing, on October 18, 1995, the court ordered the plaintiff to relinquish her interest as trustee of the policy. It also heard evidence in order to determine how much money should be sequestered into the children's trust fund in addition to the initial $60,000. Subsequent to the dissolution judgment, the defendant paid the policy premiums of approximately $20,000 using the dividends generated by the policy and borrowing from the cash value of the policy. If no loans had been taken against the policy, or dividends withdrawn, the total cash value of the policy as of July 18, 1995, would have been $129,552.31.

The plaintiff argued that the defendant improperly invaded the cash value of the policy by taking out loans and withdrawing dividends to pay the premiums. Because the cash value of the policy would have grown to $129,552.31 had the defendant not invaded the policy, the plaintiff argued that that amount should be withdrawn from the policy and turned over to a trust for the children's education. The defendant argued that as owner of the policy, he had a right to encumber its cash value. He maintained that the court should consider a prudent investment of the cash value of the policy as of the date the separation agreement was executed until the present and that the outside range of growth the court should consider would be the actual earnings of money in the policy or 7.5 percent.

In its memorandum of decision, the trial court addressed the issue of what amount of money would remedy the defendant's failure to comply with paragraph 11.4 of the separation agreement. At the outset, the trial court found that "in the absence of language permitting the defendant to use the dividends and borrow against the policy for his own benefit, and given

the predissolution history of not having done so, his invasion of the funds was prohibited." It found that the defendant had breached the agreement and ordered him to pay in full the loan and interest within ninety days and repay $5396[1] within thirty days.

"Where a judgment incorporates a separation agreement, the judgment and agreement should be construed in accordance with the laws applied to any contract. . . . The trial court's construction of the agreement is an issue of fact subject to review under the limited standard of whether it is clearly erroneous. . . . The interpretation of the agreement is a search for the intent of the parties. . . . This intent must be determined from the language of the instrument and not from any intention either of the parties may have secretly entertained." (Citations omitted.) *Sweeny* v. *Sweeny*, 9 Conn. App. 498, 500–501, 519 A.2d 1237 (1987). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) *Barnard* v. *Barnard*, 214 Conn. 99, 110, 570 A.2d 690 (1990). Applying these principles to the separation agreement incorporated into the dissolution agreement, we find that the trial court's interpretation of paragraph 11.4 of the separation agreement was clearly erroneous.

The trial court correctly determined that the defendant had breached the separation agreement by failing to establish a trust for his children's education. The trial court's interpretation of the agreement, however, as prohibiting the defendant's "invasion of the funds" absent language permitting it was clearly erroneous.

---

[1] Although it is unclear from the trial court's memorandum of decision what this figure represents, we assume the amount is equivalent to the dividends the defendant withdrew from the life insurance policy for the period of July through December 1992.

The clear and unambiguous language of the agreement required the defendant only to place the then existing cash value of his life insurance into a trust. The provision did not require the defendant to give up ownership of the life insurance policy or to place the entire policy in trust. The defendant, as owner of the policy, was allowed to encumber, sell, or dissipate his asset in excess of the then existing cash surrender value. Because the trial court initially found that the defendant was not in contempt of the dissolution order, it incorrectly concluded that his actions against the policy were improper.

The trial court properly recognized that the children's trust was entitled to an additional amount of growth had the initial corpus been prudently invested. Its remedial order, however, requiring the defendant to pay back the loans and the dividends taken out on the policy went beyond the express terms of the separation agreement. The agreement required the defendant only to place an amount equal to the then existing cash value of the policy into a separate trust. Because he did not timely establish this trust, he is obligated to pay an additional amount representing a prudent investment of the initial funds. The trial court's order should have required the defendant only to set aside in trust the cash value of the policy as of the date the separation agreement was executed plus an additional amount representing growth had the funds been reasonably invested. We conclude that the trial court's findings and orders on the interpretation of the separation agreement is clearly erroneous and not supported by the clear and unambiguous language of the agreement.[2]

The plaintiff claims on cross appeal that the trial court improperly denied her motion for an award of

[2] We do not reach the defendant's second claim that the trial court's order was tantamount to a modification of a property settlement because we reverse the order on the basis of his first claim.

counsel fees to defend against the defendant's motion to adjudge her in contempt. The plaintiff argues that the defendant's purpose in filing his contempt motion was solely to "remove her as a roadblock to the defendant's intention to regain complete dominion and ownership of the Guardian life insurance policy and its cash value for his own purposes." The trial court did not find the plaintiff in contempt and denied her counsel fees "in consideration of the conduct of both parties and the financial considerations inherent in the remedial orders that the court *did* issue." (Emphasis in original.)

General Statutes § 46b-87 allows the court to order attorney's fees against one found in contempt and also provides that "if any such person is found not to be in contempt of such order, the court may award a reasonable attorney's fee to such person." The award of attorney's fees in contempt proceedings is within the discretion of the trial court. *Tatro* v. *Tatro*, 24 Conn. App. 180, 189, 587 A.2d 154 (1991). Here, because the defendant raised a valid issue in his motion, the trial court did not abuse its discretion in denying the plaintiff's motion for fees.

The judgment ordering the defendant to pay back the loan and dividends withdrawn from his life insurance policy is reversed and the case is remanded for a hearing to determine the amount of growth the policy's cash value, as it existed on the date the separation agreement was executed, would have generated had it been prudently invested; the judgment denying the plaintiff's motion for counsel fees is affirmed.

In this opinion the other judges concurred.