MATTHEW J. HISTEN *v.* DENISE P. HISTEN
(AC 26099)

Schaller, Bishop and Rogers, Js.

---

Argued September 29—officially released December 19, 2006

*Matthew J. Histen*, pro se, the appellant (plaintiff).

*Denise P. Histen*, pro se, the appellee (defendant).

*Opinion*

ROGERS, J. The plaintiff in this dissolution action, Matthew J. Histen, appeals from the judgment of the trial court finding him in arrears in regard to educational support payments for two of his children, pursuant to the parties' separation agreement. The plaintiff claims that the court improperly interpreted the provision of the agreement pertaining to his obligation to contribute to the college expenses of the parties' children. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant. The plaintiff and the defendant, Denise P. Histen, were married in 1981 and have four children together. On June 17, 2004, the court, *Scholl, J.*, rendered judgment dissolving the parties' marriage and incorporating a comprehensive separation agreement submitted and voluntarily entered into by

the parties. At the time of the dissolution judgment, the parties' eldest child, a daughter, was older than eighteen years of age and had started attending college at Salve Regina University in Rhode Island (Salve Regina). The other three children all were minors.

The parties' separation agreement included a provision addressing the plaintiff's responsibility for the partial payment of college expenses. Article XIII, captioned "Educational Support Order," provides: "College Expenses: The [plaintiff] shall be responsible for paying one-half (1/2) of the actual cost of college tuition, room and board and books for the children. The maximum cost to be assumed by the [plaintiff] shall be the equivalent of one-half (1/2) of the in-state, resident cost of tuition, room and board, and books at the University of Connecticut for each year that each child attends college or further education. The parties agree that this provision shall only be in effect for the four years following each child's graduation from high school."

On October 28, 2004, the defendant filed a motion for contempt, alleging that the plaintiff was not complying with the separation agreement. By the time the motion was filed, the parties' second oldest child, a son, had graduated from high school and started to attend college at the University of Connecticut. In her motion, the defendant claimed, inter alia, that the plaintiff had failed to pay his share of both the son's and the daughter's college expenses as required by the agreement. Particularly, the defendant alleged that the plaintiff "[r]efuse[d] to pay for [the daughter] and owes $3300 for [the son]."

Following a hearing on November 15, 2004, at which the parties testified and presented argument,[1] the court,

---

[1] The parties both represented themselves at the contempt hearing, and they continue to proceed pro se on appeal. Each party, however, was represented by counsel during the dissolution proceedings and for the drafting of the settlement agreement.

*Dyer, J.,* declined to find the plaintiff in contempt but issued an order directing him to pay arrearages as to each child's college expenses. The amounts ordered to be paid, $3201 for the daughter and $1890 for the son, represented half of the balance due to each child's respective school after various grants and scholarships had been deducted, and were determined on the basis of the defendant's testimony at the hearing. The plaintiff filed a motion to reargue, which the court denied. This appeal followed.

The plaintiff claims that the court improperly interpreted the educational support provision of the parties' separation agreement in three ways. First, he argues that in addition to grants and scholarships, the court should have deducted student loans received by the children to determine the "actual costs" to which he was required to contribute under the agreement. Second, he claims that the agreement contemplated only educational support for the parties' children who were minors at the time of the dissolution and, therefore, did not require him to contribute to the elder daughter's college expenses. Third, he contends that the court, in determining the amount due for that daughter's expenses at Salve Regina, improperly applied the clause limiting his obligation to the equivalent charges at the University of Connecticut. We disagree with the plaintiff's first two claims and conclude that his third claim is not properly before this court.

We note first the applicable standard of review. Resolution of each of the claims raised by the plaintiff turns on an interpretation of the educational support provision in the parties' separation agreement. "[I]t is familiar law that a marital dissolution agreement is a contract. . . . Thus, in reviewing it, we are guided by the law that the interpretation of a contract may either be a

question of law or fact, depending on whether the language of the contract is clear and unambiguous." (Citation omitted.) *Medvey* v. *Medvey*, 83 Conn. App. 567, 571, 850 A.2d 1092 (2004). When the language of the agreement is clear and unambiguous, its meaning is a question of law subject to plenary review. Id. When the agreement at issue is ambiguous, however, its meaning is a question of fact, and the court's interpretation thereof will not be disturbed on appeal unless it is clearly erroneous. See *Champagne* v. *Champagne*, 43 Conn. App. 844, 848, 685 A.2d 1153 (1996).

The plaintiff's first claim is that the term "actual cost," as used in the educational support provision of the parties' separation agreement, contemplates the balance due to the particular school after grants, scholarships *and* student loans have been deducted.[2] The defendant, conversely, argues that the term "actual cost" does not contemplate the net cost of each child's education after the application of student loans,[3] but only after the deduction of amounts from sources not ultimately requiring repayment, i.e., grants and scholarships. We agree with the defendant.

---

[2] In making his first argument, the plaintiff cites to various materials that he has included in the appendix to his brief but did not submit to the court during the November 15, 2004 contempt hearing, namely, the transcript of the June 17, 2004 hearing at which the parties' marriage was dissolved and various pamphlets pertaining to educational financial aid. We cannot consider any of these documents in deciding the issues on appeal, as we are "limited in [our] review to matters contained within the record. In deciding a case, this court cannot resort to matters extraneous to the formal record, to facts which have not been found and which are not admitted in the pleadings, *or to documents or exhibits which are not part of the record.*" (Emphasis added; internal quotation marks omitted.) *Blakeman* v. *Planning & Zoning Commission*, 82 Conn. App. 632, 641 n.8, 846 A.2d 950, cert. denied, 270 Conn. 905, 853 A.2d 521 (2004).

[3] At the hearing on her motion for contempt, the defendant testified that she had either charged amounts to her credit cards or cosigned her children's student loans when their college bills became due and that the plaintiff refused to remit the necessary amounts.

"[A] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms."[4] (Internal quotation marks omitted.) *566 New Park Associates, LLC* v. *Blardo*, 97 Conn. App. 803, 810, 906 A.2d 720 (2006).

Although the term "actual cost"[5] is not defined in the agreement, we conclude that it is clear and unambiguous and that the court gave it the correct effect. The common, natural and ordinary meaning of cost is "the price paid to acquire, produce, accomplish or maintain

---

[4] We reject at the outset the plaintiff's contention, pressed throughout his appellate brief, that the educational support provision of the parties' separation agreement must be construed with reference to language contained in General Statutes § 46b-56c, a fairly recent enactment authorizing courts to enter educational support orders in dissolution proceedings in the event the parties fail to reach a voluntary agreement regarding their children's college expenses.

It is abundantly clear from the record in this case that the parties reached a voluntary settlement agreement that addressed the question of their children's postmajority educational expenses, and, therefore, there was no need for the court to issue an educational support order under the authority of § 46b-56c. It is further clear that neither party requested such an order, nor did the court at the time of dissolution make the predicate findings necessary to issue such an order. See General Statutes § 46b-56c (b) (4) (c). Accordingly, the terms used in that statute have no bearing whatsoever on the construction of the language chosen by the parties when they drafted their voluntary settlement agreement.

[5] The plaintiff devotes significant effort in his brief arguing the meaning of the term "financial aid." That term, however, does not appear in the educational support provision of the parties' agreement.

anything." Random House Webster's Unabridged Dictionary 457 (2d Ed. 2001). Whether the funds an individual remits to an institution to acquire an education come from that individual's own assets or first are obtained from a third party lender, they most assuredly are "paid" by the individual to the institution in satisfaction of a bill. More importantly, at some future point, the lender will demand that the individual repay the amounts loaned, along with additional interest. In contrast, scholarships and grants apply to reduce the amount charged by the institution at the outset and reimbursement is never required. Thus, they are not part of the "price paid" to the institution by the individual acquiring an education. We conclude that the court properly construed the term "actual costs" in the parties' agreement to not include a deduction for the portion of educational expenses that constituted student loans.

The plaintiff argues next that the parties' separation agreement provided only for the education of their three youngest children, who were minors at the time of the agreement's execution, and not for their elder daughter, who already had reached the age of majority at that time. According to the plaintiff, because only the parties' youngest three children are identified in the introduction to the separation agreement, they are the only ones contemplated by the term "the children" in the educational support provision. We do not agree.

Reading the contract in its entirety and giving the educational support provision a fair and reasonable construction in light of the other provisions and the situation of the parties; see *Enviro Express, Inc.* v. *AIU Ins. Co.*, 279 Conn. 194, 199, 901 A.2d 666 (2006); *566 New Park Associates, LLC* v. *Blardo*, supra, 97 Conn. App. 810; we conclude that "the children," as used in the educational support provision, clearly contemplates *all* of the parties' children. To begin, the term itself is

not explicitly qualified to exclude one child, as would be expected if the parties intended to accord one of their offspring such differential treatment. Additionally, although the introductory provision noted by the plaintiff, as well as other provisions of the agreement concerning custody and visitation, identified only the three youngest children of the parties, those provisions, either explicitly or by their very nature, concern only "minor" children. Accordingly, it is not surprising that the eldest child, having reached the age of majority at the time of the dissolution, was not mentioned in those provisions, and we decline to read any special import into that circumstance.

More tellingly, the elder daughter *is* identified by name, along with the other three children, in the provision of the settlement agreement pertaining to tax exemptions. That provision allows that the plaintiff, for the year 2003 and also thereafter, is entitled to claim both that daughter and one son as exemptions for federal tax purposes. Such an allowance is a powerful indication that the parties intended that the plaintiff would contribute toward his elder daughter's college expenses; otherwise, it is unclear why he would be justified in claiming her as a dependent. See generally 26 U.S.C. § 151 (c) (allowing exemptions for dependents); § 152 (defining dependents).

The plaintiff's final claim is that in calculating the amount due for his daughter's costs at Salve Regina, the court applied in an improper manner the clause of the educational support provision limiting the maximum amount for which he would be responsible to half of the cost of an equivalent year at the University of Connecticut. The plaintiff's precise argument is inartfully presented and difficult to understand. We conclude, however, that this argument need not be addressed because the plaintiff never made it in the

proceedings before the trial court.[6] "[W]e will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Bank of New York* v. *National Funding*, 97 Conn. App. 133, 138 n.6, 902 A.2d 1073, cert. denied, 280 Conn. 925, 908 A.2d 1087 (2006).[7]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] The plaintiff, seemingly, alluded to this claim in his motion to reargue. He does not claim on appeal, however, that the court abused its discretion in denying that motion. Furthermore, although the plaintiff filed an appeal form on December 16, 2004, stating that he was appealing from the court's judgment of arrearage and the denial of his motion to reargue, he thereafter, on February 7, 2005, filed a corrected amended appeal form stating that he was appealing only from the court's judgment of arrearage.

[7] In his reply brief, the plaintiff raises still further issues pertaining to the calculation of the arrearages due as to each of his children's college expenses and the defendant's purported lack of good faith. We similarly do not reach these claims because they were not raised in the trial court, and, further, it is well settled that new claims cannot be raised for the first time in a reply brief. See *Dinan* v. *Marchand*, 279 Conn. 558, 566 n.9, 903 A.2d 201 (2006). In addition, the plaintiff, in making these arguments, improperly requests that we consider additional evidence never submitted to the trial court. See footnote 2.